**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SADE CROCKET | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| WKM AUTOMOTIVE, INC., d/b/a | ) | |
| MCGRATH KIA OF HIGHLAND | ) | |
| PARK, a private corporation; | ) | JURY DEMAND |
| FIFTH-THIRD BANK, INC., a public | ) | |
| corporation; DAVID BEKOV, | ) | |
| TRAVOR HANSEN; and THE CITY OF | ) | |
| HIGHLAND PARK, a municipal | ) | |
| corporation, | ) | |
|     Defendants. | ) | |

## COMPLAINT

### Introduction and Statement of Jurisdiction

Plaintiff Sade Crocket ("Plaintiff") by her attorney, for her Complaint (the "Complaint"), against Defendants alleges as follows:

1.    Plaintiff brings claims seeking compensatory and punitive damages against individuals, individuals acting under the color of law, business entities, and a municipal corporation for racially motivated deprivations of rights secured to Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C § 1981, 42 U.S.C. §1983, 42 U.S.C §1985, and common and statutory laws of the State of Illinois in connection with Plaintiff's March 10, 2023, unlawful arrest for felony forgery.

2.    This Court has jurisdiction under 28 U.S.C §1331 and §1343 and has supplemental jurisdiction over the State of Illinois common law and statutory causes of action under 28 U.S.C. §1367.

3.    Plaintiff seeks attorney fees and costs pursuant to 42 U.S.C. §1988.

1

**FACTUAL BACKGROUND**[1]

**Parties**

4.      Plaintiff, is a 36-year-old African American woman, who at all relevant times was a citizen of the United States of America and a resident of the State of Illinois in this Judicial District.

5.      Defendant WKM Automotive d/b/a McGrath Kia of Highland Park, ("McGrath Kia" unless otherwise specified) is a corporation located in the State of Illinois, in this Judicial District and conducts its business, open to the public, within the venue of this Court.

6.      Defendant Fifth-Third Bank, ("Fifth-Third" unless otherwise specified) is a corporation located in the State of Illinois, in this Judicial District and conducts its business, open to the public, within the venue of this Court.

7.      Defendant City of Highland Park ("Highland Park" unless otherwise specified) is a municipal corporation located in the State of Illinois, in this Judicial District and maintains a police department for the protection of its citizens. At all relevant times, Highland Park was the employer of Defendants, David Bekov ("Bekov"), and Travor Hansen ("Hansen") (collectively referred to as "Defendant Officers" unless otherwise specified). On information and belief both Bekov and Hansen are White men.  Defendant Officers were at all relevant times employed as police officers by Highland Park, a municipal corporation existing under the laws of State of Illinois.

8.      All acts and omissions committed by Defendant Officers were committed within the course and scope of their employment, under color of law, and pursuant to the actual customs, policies, practices, and procedures of Highland Park. Defendant Officers are sued as individuals and not in their official capacities for purposes of 42 U.S.C. §1983, and in both their official capacities as Highland Park police officers and as individuals for purposes of 42 U.S.C §1981 and 42 U.S.C. §1985.

---

[1] The Factual Background in the Complaint are supported by the Affidavit of Mr. Enoch Graves, attached as Exhibit "A".

9.      All events giving rise to the claims asserted in this Complaint occurred within this Judicial District.

10.      At all material times, each Defendant was jointly engaged in tortious activity, resulting in deprivations of Plaintiff's constitutional rights and other harm.

11.      This complaint may be pleaded in the alternative pursuant to Federal Rules of Civil Procedure 8(d)(2).

**The Events of March10, 2023**

12.      On or about March 10, 2023, Fifth-Third was the employer of Aura Hidalgo ("Hidalgo" unless otherwise specified); a Hispanic female, Olga Mota ("Mota" unless otherwise specified"); a Hispanic female, and Carroll Doe ("Carroll" unless otherwise specified); a White female, last name presently unknown to Plaintiff.  Carroll, Hidalgo, and Mota were employed in a managerial capacity or were otherwise agent's, employees, and/or representatives of Fifth-Third located at 3030 E. 92nd St. Chicago, IL 60617, acting within the course and scope of their employment. The Fifth-Third located at 3030 E. 92nd St. Chicago, IL is in the Auburn Gresham neighborhood on the Southeast Side of Chicago, Cook County, IL, which is a predominately lower to middle class African American community.

13.      On or about March 10, 2023, McGrath Kia was the employer of Matt Doe ("Matt" unless otherwise specified) and Daniel Doe ("Daniel" unless otherwise specified), both White males, last names presently unknown to Plaintiff, along with other McGrath Kia agents and/or employees. Matt and Daniel, along with other McGrath Kia agents and/or employees were employed in a managerial and/or sales capacity, or were otherwise agent's, employees, and/or representatives of McGrath Kia, acting within their course and scope of employment. McGrath Kia is located at 250 Skokie Valley Rd, in Highland Park, IL 60035. Highland Park is a predominately White affluent community located outside Chicago, in Lake County, IL.

14.     On March 10, 2023, Plaintiff, accompanied her cousin Enoch Graves ("Graves" unless otherwise specified) into a Fifth-Third retail branch, located at 3030 E. 92nd St. in Chicago, IL, to obtain a cashier's check. Graves is an 82-year-old African American man and retired U.S. Navy Seal. Plaintiff is Graves caretaker and Graves, who is longstanding customer of Fifth Third, wanted to purchase Plaintiff a 2021 Chevrolet Blazer LT as birthday gift. Graves is Plaintiff's great cousin, but Plaintiff refers to him as her uncle, and he refers to her as his niece. The purpose of their March 10, 2023, visit to Fifth-Third, was for Plaintiff to obtain a cashier's check to purchase a vehicle.

15.     While at Fifth-Third, Plaintiff and Graves met with Hidalgo and Mota to obtain a cashier's check from Grave's bank account.  Plaintiff and Graves expressed to Hidalgo and Mota that the purpose of the check was to purchase a vehicle from McGrath Kia for Plaintiff. Hidalgo and Mota expressed that the bank could accommodate them without issue, and that cashier's checks were less susceptible to fraud than personal checks and would give the recipient additional assurances that the check would clear.

16.     Once additional assurances were given, Hildago, Mota, Plaintiff, and Graves contacted McGrath Kia in Highland Park via speaker phone.  Plaintiff,  Graves, Hildago and Mota spoke with McGrath Kia employees, Matt and Daniel regarding Plaintiff's planned purchase.  During the call, Matt and Daniel told Plaintiff, Graves, Hidalgo, and Mota that a cashier's check drawn from Graves' account would be an acceptable form of payment and affirmed that they understood that Plaintiff would be arriving that same day to purchase the vehicle at the Highland Park dealership, located at 250 Skokie Valley Rd, in Highland Park, IL.

17.     During the call,  Matt and Daniel, told Plaintiff, Graves, Hidalgo, and Mato, that the amount of the cashier's check should be $30,710.05; made out to McGrath Kia, and that Graves did not need to accompany Plaintiff to the dealership to purchase the car.

18.      Hidalgo and Mota subsequently issued a cashier's check in the amount of $30,710.05, made payable to McGrath Kia (the "Check"), to be drawn from Graves account and

4

tendered it to Plaintiff.  Plaintiff & Graves paid Fifth-Third $10.00 for the Check.  The Check was drawn on Fifth-Third's account, signed by Fifth-Third; with Fifth-Third's address, account number and phone number, and addressed to Defendant McGrath Kia.

19.     Soon thereafter, Plaintiff left the bank and traveled to McGrath Kia in Highland Park to purchase the vehicle.  Graves did not accompany Plaintiff to the dealership because he did not want to make the trip from the Southeast Side of Chicago to Highland Park.

20.     Upon arrival at McGrath Kia in Highland Park, Plaintiff met with Matt and Daniel, where she affirmed their earlier conversation. During the discussion, Plaintiff noticed a sense of unwelcomeness from Matt, Daniel and other McGrath Kia staff, who were predominately white. Plaintiff noticed that she only saw one African American employee at the dealership, who appeared to be on the cleaning crew. Nevertheless, Plaintiff test drove a 2021 Chevy Blazer LT and expressed to Matt and Daniel that she wanted to buy the vehicle. Plaintiff subsequently tendered the Check to Matt and Daniel in the amount they had been previously agreed, earlier that day.

21.     Subsequently thereafter, Matt and Daniel went to the back of the dealership to presumably call Fifth-Third to validate the legitimacy of Plaintiff's Check. Plaintiff remained in the dealership waiting area per the instructions of Matt and Daniel. On information and belief, during the call, Matt and Daniel referenced Plaintiff's race as African-American, did not contact the branch where the Check was drawn at 3030 E. 92nd St. Chicago, IL, and did not reference the earlier conversation they had with Plaintiff, Graves, Hidalgo and Mota.  Instead, Matt and Daniel either: (1) intentionally, negligently, and/or recklessly asserted they believed Plaintiff's Check was fraudulent without adequate investigation based solely on Plaintiff's race; (2) intentionally, negligently and/or recklessly provided false information to Fifth-Third based solely on Plaintiff's race; and/or (3) intentionally, negligently and/or recklessly failed to inform Fifth-Third of their earlier conversation with Hidalgo and Mota, based solely on Plaintiff's race.

22.     On information and belief, during the call, Fifth-Third, without adequate investigation or due diligence intentionally, negligently and/or recklessly failed to verify the legitimacy of Plaintiff's Check, and falsely asserted to Matt and Daniel that Plaintiff's Check was: (1) fraudulent; and (2) that law enforcement should be called to arrest Plaintiff.

23.     McGrath Kia and Fifth-Third both intentionally, negligently and/or recklessly falsely accused Plaintiff of attempting to use a fraudulent check based solely on Plaintiff's race, without adequate investigation or due diligence.

24.     Thereafter, without further inquiry, and with no attempt to contact the branch where the Check was drawn or an attempt to alert Fifth-Third that a mistake may have been made, Daniel telephoned 9-1-1 on McGrath Kia's telephone.

25.     On information and belief, when McGrath Kia telephoned 9-1-1, McGrath Kia deviated from its own policy and practice to return checks to customers and decline the sale, when the validity of a check may be in question.  McGrath Kia deviated from this policy and practice; based solely upon Plaintiff's race, and instead called the police for Plaintiff to be arrested. On information and belief, had Plaintiff been a white woman or man, with all other facts being the same, McGrath Kia would not have called the police to have Plaintiff arrested.

26.     On information and belief, when Fifth-Third instructed McGrath Kia to telephone 9-1-1, Fifth-Third deviated from its own policy and practice to verify the account holder and to contact the bank branch where a cashier's check was drawn, when the validity of a cashier's check may be in question.  Fifth-Third deviated from this policy and practice based solely upon Plaintiff's race, and instead advised McGrath Kia that Plaintiff's Check was fraudulent and that police should be called to arrest Plaintiff.  On information and belief, had Plaintiff been a white woman or man, with all other facts being the same, Fifth-Third would not have advised McGrath Kia that the Check was fraudulent and that the police should be called to arrest Plaintiff.

27.     Nevertheless, while deviating from McGrath Kia policies and practices, Daniel upon information and belief, called 9-1-1, identified himself as a McGrath Kia employee, informed the police dispatcher that an African-American woman was at the dealership attempting to purchase a vehicle with a fraudulent check, and informed the police dispatcher that McGrath Kia wanted Plaintiff arrested and removed from the dealership, immediately.

28.     Shortly thereafter, Highland Park police, dispatched Defendant Officer's to McGrath Kia to investigate a "fraudulent check". Upon arrival, Defendant Officers told Plaintiff they were there to investigate Plaintiff's Check. In response, Plaintiff told Defendant Officers that the Check was not fraudulent and attempted to give her version of events by informing Defendant Officers that she had visited Fifth-Third's branch located at 3030 E. 92nd St., earlier that day, and purchased a cashier's check in the amount of $30,710.05 to purchase a vehicle.

29.     Additionally, Plaintiff told Defendant Officers, that her Check was issued from her Uncle's account (not hers) because her Uncle, wanted to purchase her a 2021 Chevrolet Blazer LT, and that her Uncle's name was Enoch Graves. Moreover, Plaintiff told Defendant Officers, that she, along with McGrath employee's, Matt and Daniel, and representatives from Fifth-Third, had spoken via telephone and reached an agreement, earlier that day, regarding Plaintiff's preferred method of payment for the vehicle.

30.      During her conversation with Defendant Officers, Plaintiff called Graves via her mobile phone and pleaded with Defendant Officers to speak with Graves, as the Check was drawn from Graves, Fifth-Third account, not hers; however, Defendant Officers declined to do so.

31.     After Plaintiff gave Defendant Officer's her version of events, Bekov asked Plaintiff if she was from the area where the Fifth-Third branch was located.  Plaintiff responded, "Yes, she lived in the area", Bekov then proceeded to state to Plaintiff condescendingly, "Oh you're from Gresham, ok…".  Plaintiff then stated that she was from the Englewood neighborhood of Chicago and Bekov indicated he was familiar with that area as well.

7

32.     Bekov then informed Hansen that he was going to call the Fifth-Third branch located at 3030 E. 92nd Street, to validate whether Plaintiff had visited Fifth-Third, earlier that day to purchase the Check. Bekov then left the Dealership, walked to his squad car located in McGrath Kia's parking lot, and telephoned Fifth-Third.

33.     During the call, Bekov was able to speak to Fifth Third employee, Carroll, who confirmed her identify via telephone as the manager of Fifth-Third, located at 3030 E. 92nd Street, Chicago, IL. Bekov then proceeded to ask Carroll whether an account holder by the name of Sade Crocket, had come into the bank earlier that day, to purchase a cashier's check because he was at McGrath Kia, in Highland Park, IL, investigating a call from the dealership for check fraud.

34.     During the call, Bekov did not identify Graves, as the account holder of the Check. Instead, Bekov, identified Plaintiff, by name only to Carroll. Carroll initially stated to Bekov that Plaintiff's Check was probably not fraudulent, at which point Beckov stated to Carroll: "It could be, right". Bekov then indicated to Carroll that McGrath Kia told Defendant Officers; upon their arrival to the dealership, that Fifth-Third told McGrath Kia, via telephone that the Check was fraudulent. At this point Carroll stated to Bekov, if McGrath Kia "told you that the Check was fraudulent, then the Check was likely fraudulent" because (1) Fifth-Third didn't have a customer named Sade Crockett; (2) that the bank's systems were down so she could not validate the legitimacy of the Check; (3) that no large cashier's checks had been issued by the bank that day; and (4) that "THEY", people from those neighborhoods, neighborhoods like the ones Plaintiff was from, are probably using Plaintiff as a "tool", to purchase a vehicle with a fraudulent check.

35.     Bekov then proceeded to thank Carroll for her time and indicated that he agreed "people from those neighborhoods", are probably using Plaintiff as a "tool" to purchase the vehicle with a fraudulent check. Bekov then ended his phone call with Carroll and returned to the lobby of McGrath Kia.

8

36.    Upon his return, Bekov summarized to Hansen his conversation with Carroll and stated that he believed Plaintiff's Check was fraudulent and that Fifth-Third confirmed that Plaintiff's Check was fraudulent.

37.    Hansen then asked Bekov the name of the account holder that was given to Fifth-Third during the call, whether it was Plaintiff, Sade Crocker or her Uncle, Enoch Graves.

38.    Instead of answering Hansen's question, Bekov restated to Hansen, that he believed Plaintiff's Check was fraudulent and that Fifth-Third confirmed that Plaintiff's Check was fraudulent.  In doing so, by refusing to answer Hansen's question, Bekov intentionally and/or with callous and reckless disregard for Plaintiff's rights, conspired to conceal and/or purposely cover up, the actual events that led to Plaintiff's arrest and made statements that were not truthful or accurate concerning Plaintiff's arrest.

39.    Immediately thereafter, and with no further inquiry, Plaintiff was arrested by Defendant Officers and placed into custody for allegedly committing fraud.

40.    Plaintiff' arrest was made without provocation, and without probable cause and was motivated by her race as an African American woman.

41.    Plaintiff's arrest was directly caused the by the acts and/or omissions of McGrath Kia, Fifth-Third, Defendant Officers, and the City of Highland Park, who acted in concert to deprive Plaintiff of her federal and legal rights.

42.    During the arrest, McGrath Kia and Fifth-Third committed unlawful acts and omissions and knowingly and/or negligently made false accusations to Defendant Officers. Such acts and omissions resulted in Plaintiff being charged with felony forgery pursuant to 720 ILCS 5/17-3(a)(2) and subject to 10-years imprisonment.  At no time, before, during or after Plaintiff's arrest did Matt and Daniel inform Defendant Officers that an agreement had been made; between Plaintiff, Graves, McGrath Kia and Fifth-Third earlier that day, to accept Plaintiff's Check, as an acceptable form of payment.

9

43.     There was no probable cause or legal justification to arrest Plaintiff on March 10, 2023.

44.     Immediately before the arrest, Plaintiff was not violating any laws, rules, or ordinances. As Plaintiff was being arrested, she was not violating any laws, rules, or ordinances.

45.     At the time of Plaintiff's arrest, Defendant Officers knew there was no probable cause or legal justification to arrest Plaintiff and could have intervened to stop or prevent the arrest, but failed to do so, after they learned that: (1) Fifth-Third's systems were down; (2) Fifth-Third could not actually validate the legitimacy of the check; and (3) the wrong account holder's name had been given to Carroll during the call placed to the Fifth-Third branch located at 3030 E. 92nd Street.

46.     During the arrest Defendant Officers handcuffed, searched, seized, and forcibly removed Plaintiff from McGrath Kia and placed her in the police car in front of a large crowd of people. As a result of these unlawful actions, Plaintiff was brought to tears and began to have a nervous breakdown, as she knew she had done nothing wrong.

47.     After the arrest, Plaintiff was transported to the Highland Park police station, detained at the police station overnight, against her will, in violation of her Civil Rights and contrary to both Illinois and Federal law.

48.     After arresting and/or causing Plaintiff's arrest, Defendant Officers reported the incident to the Lake County State's Attorney, who without inquiry, immediately approved a charge of Felony Fraud pursuant 720 ILCS 5/17-3(a)(2). When reporting the arrest to the Lake County State's Attorney, Defendant Officers knowingly made false accusations, which set the prosecution in motion for felony fraud.

49.     On March 13, 2023, several media outlets ran an article published by the Lake & McHenry County Scanner that read "POLICE SAY CHICAGO WOMAN TRIED PURCHASING CAR WITH FAKE $30,0000 CHECK FROM HIGHLAND PARK CAR DEALERSHIP". See Lake & McHenry County Scanner Article, attached as Exhibit "B".

B.  This article was circulated on the internet and republished by multiple media outlets, which resulted in damages to Plaintiff's reputation. The newspaper article, which displayed Plaintiff's name; front and center, was published on the internet, and is still viewable today.

50.     A separate article titled "FAKE CHECK AT CAR DEALERSHOP" was published by Patch.com, featured on Microsoft News site MSN.com, and contained Plaintiff's name and address under the heading ARRESTS/CITATIONS.  The article read as follows: "**Sade Crockett**, 36, of the 7000 block of South Lowe Avenue, Chicago, was arrested around 6:15 p.m. on March 10 and charged with forgery, after police were called to McGrath Kia, 250 Skokie Valley Road, where Crockett had reportedly tried to buy a car with a cashier's check for $30,710.05. Police said bank representatives informed car dealership employees that the check was fraudulent".  See Patch Article, attached as Exhibit C.

51.     But for the unlawful actions of McGrath Kia, Fifth-Third and Defendant Officers, these articles would not have been written nor published.  These articles have resulted in damages to Plaintiff's reputation, name, likeness, livelihood and overall health.  As a result, Plaintiff has suffered from severe emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages. All articles are still viewable today via a Google search of Plaintiff's name.

52.     Neither McGrath Kia, Fifth-Third, Defendant Officers, nor the City of Highland Park have made attempts to correct the false statements published in the articles.

53.      By failing to intervene before or after the news articles were published in print and on the internet, McGrath Kia, Fifth-Third, Defendant Officers and the City of Highland Park conspired to conceal and/or cover-up the unlawful arrest of Plaintiff.  In doing so, McGrath Kia, Fifth-Third, and Defendant Officers purposely failed to document the actual events that led to the Plaintiff's arrest, made statements that were not truthful or accurate concerning Plaintiff's arrest, and allowed reports to be authored that concealed the actual events of Plaintiff's arrest and innocence.

54. Plaintiff was not guilty of any criminal offense, and Defendants did not at the time of causing Plaintiff's arrest, or any other time, have probable cause to believe Plaintiff was guilty of a criminal offense.

55. McGrath Kia, Fifth-Third, and Defendant Officers falsely accused Plaintiff of attempting to use a fraudulent check based solely on Plaintiff's race, leading to Plaintiff's arrest.

56. The acts of McGrath Kia, Fifth-Third, Defendant Officers, and the City of Highland Park were intentional, willful and wanton.

57. As a result of Defendants actions, Plaintiff suffered emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages at the Highland Park car dealership, during her arrest, at the police station, and thereafter.

58. McGrath Kia, Fifth-Third, and Defendant Officers negligently and/or recklessly, and with willful and wanton disregard for Plaintiff's rights asserted that the Check was fraudulent without adequate investigation, leading to Plaintiff's arrest.

59. At all times during the events leading to Plaintiff's arrest, Plaintiff was a ready, willing, and able buyer of the 2021 Chevrolet Blazer LT from McGrath Kia.

### The Criminal Prosecution and Dismissal of Criminal Charges Against Plaintiff.

60. Defendant Officers signed and caused to be filed with the Circuit Court of Lake County, written criminal complaints, containing the names and addresses of McGrath Kia and Fifth-Third as witnesses, after giving their sworn oath that the facts stated in the complaint were true. The complaint alleged that Plaintiff committed the offense of felony fraud. Defendant Officers willfully signed said complaint, under oath knowing the allegations contained therein were false.

61. The criminal complaint against Plaintiff, alleged that Plaintiff committed the offense of Felony Fraud pursuant 720 ILCS 5/17-3(a)(2). The charge was prosecuted under Lake County, IL

12

Circuit Court Case Number 23CF482, <u>People of the State of Illinois vs. Sade Crocket</u>. As a result of the charge Plaintiff faced 10 years imprisonment for a crime, she did not commit.

62.     Due to the criminal charge, Plaintiff was forced to retain counsel, and attend multiple court proceedings on March 11, 2023, March 29, 2023, April 26, 2023, June 15, 2023, and July 18, 2023. During each court proceeding, Plaintiff had to relive her March 10th arrest where she was racially profiled and unlawfully arrested.  Due to these memories, Plaintiff suffered multiple panic and anxiety attacks during and after each court appearance. These panic attacks were witnessed by Plaintiff's defense counsel and family members, until Plaintiff's charges were ultimately dismissed on July 18, 2023.

63.     In one instance, on April 26, 2023, after the criminal case was continued without dismissal, Plaintiff had an emotional breakdown, while on the elevator with her attorney and family member, wherein Plaintiff broke down in tears while repeatedly shouting: "Why is this happening to me".  Moreover, during each court appearance Plaintiff would openly cry in court, each time, the case was continued without dismissal, as she had been labeled a fraudster as a result of the criminal proceedings, and in multiple media publications, including MSN.com, which is viewable by millions of people.

64.     On July 18, 2023, the criminal proceedings against Plaintiff were subsequently dismissed; indicative of innocence, when the Lake County State's Attorney's dismissed all charges against Plaintiff.  After informing the Judge the case would be dismissed, the Lake County Prosecutor said to Plaintiff's attorney: "Sorry it took so long".

65.     Defendant Officer's prepared and submitted to the prosecutors, arrest reports containing false information regarding Plaintiff.

66.     McGrath Kia and Fifth Third gave false information to the prosecutors and police officers.

67.     The criminal prosecution against Plaintiff was commenced and completed without probable cause to believe that Plaintiff had committed a crime.

68.     McGrath Kia, Fifth-Third and Defendant Officers knew or should have known that their acts and omissions would cause Plaintiff severe emotional distress.

69.     McGrath Kia, Fifth-Third and Defendant Officers knew or should have reasonably foreseen their acts and omissions would cause Plaintiff severe emotional distress.

70.     The acts and omissions of all Defendants caused the commencement and prosecution of criminal charges against Plaintiff.

71.     The acts and omissions of all Defendants were committed with malice and with the intent to injure Plaintiff.

72.     The acts and omissions of all Defendants were motivated by the fact that Plaintiff was an African American woman.

73.     All Defendants committed the aforementioned and later stated acts and/or omissions by reason of the Plaintiff's perceived race and color.

74.     The acts and omissions of all Defendants proximately caused Plaintiff to suffer injuries; including but not limited, to the following deprivations of civil rights, loss of liberty, severe emotional harm and other emotional injury, missed time from work, subjection to criminal prosecution, liability for legal expenses, along with the slandering of her character.

75.     All Defendants committed these acts and omissions in order to deprive Plaintiff from exercising her rights and privileges as a citizen of the United States and such acts and omissions were motivated by Plaintiff's race.

**COUNT I – VIOLATION OF 42 U.S.C. §1983**

**Unreasonable Search and Seizure, False Imprisonment, False Arrest, Malicious Prosecution & Violations of 14th Amendment Rights Claims**
**VS. ALL DEFENDANTS**

76.     The Plaintiff realleges Paragraph 1-75, inclusive, and incorporates those Paragraphs as though fully stated as this Paragraph 76.

77.     On March 10, 2023, Defendant Officers, acting on behalf of the municipality, within their scope of employment, under color of law, and without provocation or probable cause, seized and arrested Plaintiff and restrained her against her will.

78.     During her arrest, Plaintiff was searched and detained for an extensive period of time, against her will and contrary to both Federal and Illinois law.

79.     Fifth-Third is liable to Plaintiff for claims because Carroll, Hidalgo, and Mato were Fifth-Third's employee-agent's and because Fifth-Third maintained a custom or policy of intentionally discriminating against African-Americans in violation of their Fourteenth Amendment rights to the equal protection of laws and such policy's and customs were carried out by Fifth-Third's employees acting within their scope of employment.

80.     McGrath Kia is liable to Plaintiff for claims because Matt and Defendant were McGrath Kia employee-agents and because McGrath Kia maintained a custom or policy of intentionally discriminating against African-Americans in violation of their Fourteenth Amendment rights to the equal protection of laws and such policy's and customs were carried out by Defendant Matt and Defendant Daniel acting within their scope of employment.

81.     Fifth-Third and McGrath Kia are liable to Plaintiff under 42. U.S.C. §1983 because they directed, instructed, conspired, acted in concert with and assisted Defendant Officers in depriving Plaintiff of her Fourth Amendment right to be free from unreasonable searches, unreasonable seizures, false imprisonment, false arrest, and malicious prosecution. Additionally, they deprived Plaintiff of her Fourth Amendment right, while acting under color of law, to be free from unreasonable searches and seizures and acted in conjunction with and assisted Defendant Officers in depriving Plaintiff of her Fourteenth Amendment right to equal protection of the laws by intentionally discriminating against Plaintiff on the basis of race.

15

82.     Defendant Officers are liable to Plaintiff under 42. U.S.C. §1983 because they deprived Plaintiff of her Fourth Amendment right to be free from unreasonable searches, unreasonable seizures, false imprisonment, false arrest, and malicious prosecution and deprived Plaintiff of her Fourteenth Amendment right to the equal protection of laws.

83.     Defendant City of Highland Park is liable to Plaintiff under 42. U.S.C. §1983 for all claims brought against Defendant Officers because their deprivations arose from "maintaining a policy or custom" of intentional harassment and discriminatory application of laws and procedures on the basis of race; and for depriving Plaintiff of her Fourteenth Amendment right to the equal protections of law.

84.     Plaintiff was not guilty of any criminal offense and Fifth-Third, McGrath Kia, and Defendant Officers did not at the time of causing Plaintiff's arrest, or any other time, have probable cause to believe Plaintiff was guilty of a criminal offense, as there was no reasonable basis to suspect that the Check was fraudulent.  The Check was legitimate and there were no grounds for arrest and criminal prosecution.

85.     The actions of Defendant McGrath Kia in falsely accusing Plaintiff of check fraud and calling law enforcement without probable cause resulted in Plaintiff's unreasonable search and seizure, false imprisonment, false arrest, and malicious prosecution in violation of Plaintiff's Fourth Amendment rights and intentional discrimination in violation of Plaintiff's Fourteenth Amendment rights.

86.     The actions of Defendant Fifth-Third and Defendant Officers in falsely accusing the Plaintiff of check fraud and intentionally, negligently and/or recklessly failing to verify the legitimacy of Plaintiff's Check resulted in Plaintiff's unreasonable search and seizure, false imprisonment, false arrest, and malicious prosecution in violation of Plaintiff's Fourth Amendment rights and intentional discrimination against Plaintiff in violation of Plaintiff's Fourteenth Amendment rights.

87. The aforementioned conduct of the agents and employs of McGrath Kia, Fifth-Third, and the City of Highland Park occurred within the scope of their employment, under color of law, was objectively unreasonable, and violated clearly established law.

88. McGrath Kia, Fifth-Third, and Defendant Officers falsely accused Plaintiff of attempting to use a fraudulent check based solely on Plaintiff's race in violation of the Equal Protection Clause of the Fourteenth Amendment.

89. Defendant Officer's actions, as described herein, constituted an unreasonable search and seizure in violation of the Fourth Amendment, to the United States Constitution.

90. Plaintiff was arrested by Defendant Officer's and taken into custody without legal justification constituting false imprisonment. At all times relevant to this action Defendant Officers acted with the intention of confining Plaintiff within fixed boundaries and Plaintiff was conscious of the confinement.

91. The conduct of Defendant Officers, while acting within their scope of employment and under color of law, constituted an unlawful arrest of Plaintiff, in violation of the United States Constitution.

92. Defendant Officers arrested and commenced criminal proceedings against the Plaintiff without probable cause or legal justification.

93. The criminal proceedings were instituted with malice and were ultimately dismissed in a manner indictive of innocence.

94. As a result of the matters alleged, Plaintiff was greatly injured and suffered emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages.

95. The actions of Defendant Officers and Highland Park, acting by and through its employee's Defendant Officers, were malicious and in wanton disregard of Plaintiff's rights.

96. The actions of Defendant Highland Park, acting by and through Defendant Officers, were pursuant to customs, policies, practices, and/or procedures, which were directed, encouraged,

allowed and/or ratified to allow employees of The City Highland Park to: (1) engage in and /or tolerate unreasonable searches/seizures; (2) engage in or tolerate racial profiling and differential treatment based on a person's race; (3) engage in polices that failed to require, institute and/or enforce proper and adequate training, supervision, and/or procedures conducting racial profiling, and/or racial discrimination; (4) tolerating and/or encouragement of police officers employed by the City of Highland Park to file false police reports, make fake false statements, and/or attempt to obstruct and/or interfere with police investigations by withholding and/or concealing material information; and (5) allowing and/or tolerating a "code of silence" among law enforcement officers who fail to provide adverse information against and/or hold each other accountable for official misconduct.

97.     The actions of all Defendants proximately caused the deprivations of Plaintiff's established constitutional rights in violation of 42 U.S.C. §1983, as more fully set forth above.

## COUNT II – VIOLATION OF  42 U.S.C. § 1981 VS.  ALL DEFENDANTS

98.     Plaintiff repeats and realleges paragraphs 1 – 97, inclusive, and incorporates those Paragraphs as though fully stated as this paragraph 98.

99.     McGrath Kia and Fifth-Third are liable to Plaintiff under 42 U.S.C. §1981 because they acted to deprive Plaintiff of her right to make and enforce contracts. Furthermore, they acted to deprive Plaintiff of her right to the full and equal benefit of all laws and proceedings for the security of her person and property as is enjoyed by white persons by preventing her from purchasing a vehicle and directing, instructing, and assisting, the police defendants in depriving Plaintiff of her Fourth Amendment right to be free from unreasonable searches, unreasonable, seizures, false imprisonment, false arrest, and malicious prosecution.

100.    Defendant Officers are liable to Plaintiff under 42 U.S.C. §1981 because they acted to deprive Plaintiff of her right to make and enforce contracts.  Furthermore, they acted to deprive Plaintiff of her right to the full and equal benefit of all laws and proceedings for the security of her person and property as is enjoyed by white persons and by depriving Plaintiff of her Fourth Amendment right to be free from unreasonable searches, unreasonable seizures, false imprisonment, false arrest, and malicious prosecution.

101.    Defendant City of Highland Park is liable to Plaintiff under 42 U.S.C. §1981 for all claims brought against Defendant Officers under 42 U.S.C. §1981 by maintaining a policy or custom of intentional harassment, failure to train and enforce non-discriminatory polices and/or procedures, and discriminatory application of laws and procedures on the basis of race.

102.    Section 1981 provides: *All persons within the jurisdiction of the United States shall have the same right in every State and Territory to **make and enforce contracts**, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to the punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other*. The statute also states: [*f]or purposes of this section, the term, "make and enforce contracts" includes the making, performance, modification, and termination of all contracts, including the enjoyment of all benefits, privileges, terms and conditions of the contractional relationship*. 42 U.S.C. §1981(a).

103.    All Defendant's actions, including, but not limited to the arrest, detention, and malicious prosecution of the Plaintiff, were motivated by racial discrimination, and constituted a violation of 42 U.S.C. §1981.

104.    All Defendant actions denied Plaintiff her right to make and enforce contracts, by denying Plaintiff her right to the equal enjoyment of the terms and benefits of her legitimate cashier's check, obtained at Fifth-Third on March 10, 2023. All Defendants actions denied Plaintiff her right to enter into a retail transaction with McGrath Kia to purchase a 2021 Chevrolet Blazer LT. The

discrimination by all Defendant's concerned one or more of the activities enumerated in 42 U.S.C. §1981.

105.    The willful and wanton conduct of all Defendants was the proximate cause of injuries to Plaintiff.

106.    By the above acts, all Defendant's violated 42 U.S.C. §1981 by discriminating against Plaintiff on the basis of race.

107.    As a direct and proximate result of Defendant's willful and wanton conduct, Plaintiff suffered damages, including, but not limited to emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, lost wages and earning capacity, and other damages including punitive damages.

### COUNT III – VIOLATION OF  42 U.S.C. § 1985
### VS. ALL DEFENDANTS

108.    Plaintiff repeats and realleges paragraphs 1 – 107, inclusive, and incorporates those Paragraphs as though fully stated as this paragraph 108.

109.     McGrath Kia and Fifth-Third are liable to plaintiff Under 42 U.S.C. §1985 because they conspired with at least one other Defendant or non-party person for the purpose of depriving Plaintiff of the equal protection of the laws and depriving Plaintiff of her Fourth Amendment right to be free from unreasonable searches, unreasonable seizures, false imprisonment, false arrest, and malicious prosecution; and depriving Plaintiff of her Fourth Amendment right to be free from unreasonable searches.

110.    Defendant Officers are liable to Plaintiff under 42 U.S.C. §1985(3) because they conspired with one or more defendants or non-party persons for the purpose of depriving Plaintiff of the equal protection of the laws and depriving Plaintiff of her Fourth Amendment right to be free from unreasonable searches, unreasonable seizures, false imprisonment, false arrest, and malicious

prosecution; and depriving Plaintiff of the Fourth Amendment right to be free from unreasonable searches.

111.     Highland Park is liable to Plaintiff under 42 U.S.C. §1985(3) for all the claims brought against one or more Defendant Officers by maintaining a policy or custom of intentional harassment and discriminatory application of laws and procedures on the basis of race and for depriving Plaintiff of her Fourteenth Amendment right to the equal protection of the law.

112.     McGrath Kia, Fifth-Third and Defendant Officers acted in concert and conspired to deprive Plaintiff of her rights under the United States Constitution and 42 U.S.C. §1981, in violation of 42 U.S.C. §1985. The conspiracy was motivated by racial animus and discrimination.

113.     The willful and wanton conduct of all Defendants was the proximate cause of injuries to Plaintiff.

114.     As a direct and proximate result of Defendant's willful and wanton conduct, Plaintiff suffered damages, including, but not limited to emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, lost wages and earning capacity, and other damages including punitive damages.

## COUNT IV– VIOLATIONS OF ILLINOIS STATE LAW

### A.  False Imprisonment, False Arrest & Malicious Prosecution
### VS. ALL DEFENDANTS

115.     The Plaintiff realleges Paragraph 1-114, inclusive, and incorporates those Paragraphs as though fully stated as this Paragraph 115.

116.     As described above, the actions of McGrath Kia, Fifth-Third, Defendant Officers, and the City of Highland Park caused the Plaintiff to be arrested and/or imprisoned, without probable cause, and without legal justification.

117.    Due to the arrest, the Plaintiff had her liberty to move about restrained by Defendant Officers.

118.    Defendant Officers arrested and commenced criminal proceedings against the Plaintiff without probable cause or legal justification.

119.    The criminal proceedings were instituted with malice and were ultimately dismissed in a manner indictive of innocence.

120.    The misconduct by Defendant Officers was under color of law, was within the course and scope of their employment as police officers for the City of Highland Park, was objectively unreasonable, was conducted with malice, was undertaken intentionally and was willful and wanton.

121.    As a direct and proximate result of all Defendant's actions, Plaintiff suffered damages, including, but not limited to emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, lost wages and earning capacity, and other damages including punitive damages.

## B.  Negligence VS. McGrath Kia and Fifth-Third

122.    Plaintiff repeats and realleges paragraphs 1 – 121, inclusive, and incorporates those Paragraphs as though fully stated as this paragraph 122.

123.    McGrath Kia and Fifth-Third owed a duty to Plaintiff to exercise reasonable and ordinary care not to injure Plaintiff and prevent racial discrimination in their retail establishment open to the public.

124.    McGrath Kia and Fifth-Third owed a duty to Plaintiff to exercise reasonable and ordinary care and diligence when assessing the legitimacy of the Check.

125.    Each Defendant breached their duty of care by negligently and/or recklessly accusing Plaintiff of check fraud without sufficient evidence or investigation.

126.     Plaintiff was injured during her detention, arrest, imprisonment, wrongful prosecution as well as the false and defamatory accusations published in her name and likeness. Said injuries were proximately caused by the negligence of McGrath Kia and Fifth-Third, inter alia.

127.     Defendant Fifth-Third was negligent in that Defendant:

   a.   falsely asserted that Plaintiff's legitimate cashier's check was fraudulent without adequate investigation or due diligence, and subsequently advised Defendant McGrath-Kia to call law enforcement, leading to Plaintiff's arrest based on the false allegations by Fifth-Third;

   b.   provided false information to the police;

   c.   failed to update information and correct misleading information;

   d.   failed to properly report and track certified checks within their systems;

   e.   failed to adequately track certified checks reported as fraudulent within their systems;

   f.   failed to withdraw baseless charges and criminal complaints against Plaintiff;

   g.   failed to adequately screen and train employees against racial discrimination and racial bias;

   h.   failed to follow its own policies, practices and procedures with respect to verifying cashier check payments;

   i.   were otherwise negligent.

128.     Defendant McGrath Kia was negligent in that Defendant:

   a.   falsely asserted that Plaintiff's legitimate cashier's check was fraudulent without adequate investigation or due diligence, and subsequently called law enforcement, leading to Plaintiff's arrest based on the false allegations by McGrath Kia;

   b.   filed a false police report with respect to Plaintiff;

23

    c.   provided false information to the police;

    d.   filed police reports for an improper purpose;

    e.   failed to update information and correct misleading information;

    f.   failed to withdraw baseless charges and criminal complaints against Plaintiff;

    g.   failed to adequately screen and train employees against racial discrimination and racial bias;

    h.   failed to follow its own polices, practices and procedures with respect to verifying cashier check payments;

    i.   were otherwise negligent.

129.    McGrath Kia and Fifth-Third knew or should have known that their conduct would result in the unlawful detention, false arrest, imprisonment, and prosecution of Plaintiff.

130.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and will continue to suffer in the future, severe damages, including but not limited to monetary damages, loss of wages, loss of earning capacity, physical injury, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, and both physical and mental pain, distress, and suffering.

## C.   <u>Willful and Wanton Conduct VS. ALL DEFENDANTS</u>

131.    Plaintiff repeats and realleges paragraphs 1 – 130, inclusive, and incorporates those Paragraphs as though fully stated as this paragraph 131.

132.    McGrath Kia and Fifth-Third owed a duty to Plaintiff to exercise reasonable and ordinary care not to injure Plaintiff and prevent racial discrimination in their retail establishments open to the public.

133. McGrath Kia and Fifth-Third owed a duty to Plaintiff to exercise reasonable and ordinary care and diligence when assessing the legitimacy of Plaintiff's Check, arrest and prosecution.

134. McGrath Kia and Fifth-Third breached their duty of care by maliciously and/or recklessly accusing Plaintiff of check fraud without sufficient evidence or investigation.

135. Defendant Officers owed a duty to Plaintiff to exercise reasonable and ordinary care to conduct a proper and diligent investigation into the legitimacy of Plaintiff's Check.

136. The City of Highland Park owed a duty to Plaintiff to exercise reasonable care in their arrest, investigation and prosecution customs, policies, and practices and a duty of reasonable care to refrain from engaging in reckless, willful, or wanton conduct which exhibited conscious disregard for the liberty and safety of citizens.

137. Defendant Officers and the City of Highland Park breached their duty of care by maliciously and recklessly accusing Plaintiff of check fraud without sufficient evidence or investigation. The misconduct described was committed in an objectively unreasonable fashion and constituted unjustifiable conduct undertaken with a willful indifference to Plaintiff's rights.

138. Plaintiff was injured during her detention, arrest, imprisonment, wrongful prosecution as well as the false and defamatory accusations published in her name and likeness. Said injuries were proximately caused by the willful and wanton conduct of the City of Highland Park, Defendant Officers, McGrath Kia and Fifth-Third.

139. Defendant Officers' and the City of Highland Park's conduct were reckless, willful and wanton, in one or more of the following respects:

    a.   falsely accused Plaintiff of check fraud without adequate investigation or due diligence, and subsequently arrested Plaintiff based on these false allegations;

    b.   recklessly failed to provided information provided by Plaintiff to Fifth-Third when investigating the legitimacy of the Check and proceeded to arrest Plaintiff based on incomplete and erroneous information.

    c.   provided false information to the prosecutor;

    d.   failed to update information and correct misleading information;

    e.   failed to follow proper police procedures;

    f.   failed to withdraw baseless charges and criminal complaints against Plaintiff;

    g.   otherwise engaged in reckless, willful and wanton misconduct.

140.    Defendants McGrath Kia's and Fifth-Third's conduct was reckless, willful and wanton, in one or more of the following respects:

    a.   falsely asserted that Plaintiff's legitimate cashier's check was fraudulent without adequate investigation or due diligence, and subsequently called law enforcement, leading to Plaintiff's arrest;

    b.   filed a false police report with respect to Plaintiff;

    c.   provided false information to the police;

    a.   filed police reports for an improper purpose;

    b.   failed to update information and correct misleading information;

    c.   failed to withdraw baseless charges and criminal complaints against Plaintiff;

    d.   failed to adequately screen and train employees against racial discrimination and racial bias;

    e.   failed to follow its own polices, practices and procedures with respect to verifying cashier check payments;

    f.   otherwise engaged in reckless, willful and wanton misconduct.

141.    Defendants knew or should have known that their conduct would result in the unlawful detention, false arrest, imprisonment, and prosecution of Plaintiff.

142.    The conduct described was withing the scope of Defendant Officers employment and under color of law. The conduct described was undertaken pursuant to the policies and practices of the City of Highland Park.

143.    As a direct and proximate result of Defendants' willful and wanton conduct Plaintiff has suffered and will continue to suffer in the future, severe damages, including but not limited to monetary damages, loss of wages, loss of earning capacity, physical injury, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, and both physical and mental pain, distress, and suffering.

## D.  Intentional Infliction of Emotional Distress
## VS.  ALL DEFENDANTS

144.    Plaintiff repeats and realleges paragraphs 1 – 143, inclusive, and incorporates those Paragraphs as though fully stated as this paragraph 144.

145.    As set forth herein, Defendant McGrath Kia and Fifth-Third, engaged in extreme and outrageous conduct by making false accusations to Defendant Officer's, which caused Plaintiff's false arrest and set the prosecution in motion which resulted in a charge of Felony Fraud against Plaintiff.

146.    As set forth herein, Defendant Officers and the City of Highland Park engaged in extreme and outrageous conduct by falsely arresting and detaining Plaintiff, making false accusations to the Lake County State's Attorney's Office, which set the prosecution in motion and resulted in a charge of Felony Fraud against Plaintiff.

147.    As set forth herein, all Defendants conduct was intentional and/or reckless and for a purpose other than bringing Plaintiff to justice. All Defendants knew or should have known that Plaintiff was not guilty of any crime and there was no probable cause that a crime had been

27

committed by Plaintiff, yet each Defendant initiated, proximately caused, failed to investigate, and continued criminal actions and prosecutions against Plaintiff.

148.     Each Defendant's intention was to disturb Plaintiff's peace, quiet, privacy and dignity, and Defendants did in fact do so.

149.      All Defendants' intentional acts constituted extreme and outrageous conduct, beyond the bounds of decency, which caused Plaintiff to suffer extreme and severe emotional distress and mental anguish.

150.     As a direct and proximate result of all Defendant conduct, Plaintiff has suffered and will continue to suffer in the future, severe damages, including but not limited to monetary damages, loss of wages, loss of earning capacity, physical injury, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, an both physical and mental pain, distress and suffering.

151.     As a result of all Defendant actions, Plaintiff suffered extreme emotional distress and was required to and did employ physicians to examine, treat, and care for her, thus incurring medical expenses, the exact amount of which have not yet been ascertained.

152.     Prior to all Defendant's wrongful acts, Plaintiff was able to perform her job as a hairdresser and caretaker and to do her household duties.  Since those acts, Plaintiff has suffered from anxiety, depression, fear, nervousness, irritability, and has been unable to perform her jobs and household duties.

153.     As a direct and proximate result of Defendants' intentional, reckless, willful and/or wanton conduct, Plaintiff has suffered and will continue to suffer in the future, severe damages, including but not limited to monetary damages, loss of wages, loss of earning capacity, physical injury, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, and both physical and mental pain, distress, and suffering.

**E.** **Negligent Infliction of Emotional Distress VS. McGrath Kia and Fifth-Third.**

154.    Plaintiff repeats and realleges paragraphs 1 – 153, inclusive, and incorporates those Paragraphs as though fully stated as this paragraph 154.

155.    As set forth herein, Defendant McGrath Kia and Fifth-Third, engaged in negligent conduct by failing to properly investigate the validity of the Check, by failing to follow customary policies and practices when investigating the validity of the Check and by falsely accusing Plaintiff of committing fraud, which caused Plaintiff's unlawful arrest and prosecution.

156.    McGrath Kia and Fifth-Third's conduct was negligent and they knew or should have known that Plaintiff was not guilty of any crime and there was no probable cause that a crime had been committed by Plaintiff.

157.    But for the negligent conduct of McGrath Kia and Fifth-Third, Plaintiff would not have been arrested, made to face a felony prosecution and 10-years imprisonment.

158.    As a direct and proximate result of McGrath Kia's and Fifth-Third's conduct, Plaintiff has suffered and will continue to suffer in the future, severe damages, including but not limited to monetary damages, loss of wages, loss of earning capacity, physical injury, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, an both physical and mental pain, distress and suffering.

159.    As a direct and proximate result of McGrath Kia's and Fifth-Third's conduct Plaintiff suffered extreme emotional distress and was required to and did employ physicians to examine, treat, and care for her, thus incurring medical expenses, the exact amount of which have not yet been ascertained.

160.    Prior to McGrath Kia's and Fifth-Third's negligent acts, Plaintiff was able to perform her job as a hairdresser and caretaker and to do her household duties.  Since those acts, Plaintiff has

suffered from anxiety, depression, fear, nervousness, irritability, and has been unable to perform her jobs and household duties.

161.    As a direct and proximate result of McGrath Kia's and Fifth-Third's negligent conduct, Plaintiff has suffered and will continue to suffer in the future, severe damages, including but not limited to monetary damages, loss of wages, loss of earning capacity, physical injury, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, and both physical and mental pain, distress, and suffering.

### F.    <u>Violation of Illinois Hate Crime Act  VS. McGrath Kia and Fifth-Third.</u>

162.    Plaintiff repeats and realleges paragraphs 1 – 161, inclusive, and incorporates those Paragraphs as though fully stated as this paragraph 162.

163.    On March 10, 2023, McGrath Kia and Fifth-Third, committed the offense of Disorderly Conduct in violation of 720 ILCS 5/26-1, by transmitting to Defendant Officers, peace officer's, a report that an offense had been committed, knowing that there was no reasonable ground for believing that such an offense had been committed.

164.    McGrath Kia and Fifth-Third transmitted these false reports to Defendant Officer's, because of Plaintiff's race.

165.    As a direct and proximate result of McGrath Kia and Fifth-Third, Plaintiff was arrested, suffered, and continues to suffer severe emotional anguish.

166.    As a direct and proximate result of Defendants conduct, Plaintiff has suffered and will continue to suffer in the future, severe damages, including but not limited to monetary damages, loss of wages, loss of earning capacity, physical injury, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, and both physical and mental pain, distress, and suffering.

**DEMAND FOR JURY TRIAL**

WHEREFORE, Plaintiff demands judgment in her favor on all Counts and against

Defendants for:

(a) Compensatory damages, inclusive of any and all harm attributable to Defendant's actions or

inaction;

(b) Past, present and future loss of wages and loss of earning capacity;

(c) Punitive damages;

(d) Past, present and future physical injury, loss of freedom, mental anguish, sleeplessness,

restlessness, anxiety, humiliation, loss of reputation, depression, and both physical and

mental pain, distress, and suffering;

(e) Exemplary damages;

(f) Attorney's fees and court costs;

(g) The loss of time and opportunity,

(h) Lost employment opportunities

(i) Delayed damages;

(j) Pre and post judgment interest;

(k) Such other relief as the Court deems just, necessary, and appropriate under the circumstance

or allowed by statute.

Sade Crocket

By:_____
One of her attorneys

Halil G. Hampton
Hampton & Hampton LLP
1074 W. Taylor, #353
Chicago, IL 60607
hghampton@hamptonandhamptonlaw.com
(773) 466-1558
ARDC: 6301454