## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SADE CROCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-cv-14899 |
| v. | ) | |
| | ) | Judge April M. Perry |
| WKM AUTOMOTIVE, INC., d/b/a | ) | |
| MCGRATH KIA OF HIGHLAND | ) | |
| PARK, FIFTH THIRD BANK N.A., DAVID | ) | |
| BEKOV, TREVOR HANSEN, CITY OF | ) | |
| HIGHLAND PARK, IL, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The claims in this case arise out of the wrongful arrest and prosecution of Plaintiff Sade

Crockett ("Plaintiff"), an African American woman, for allegedly attempting to use a fraudulent

check to buy a car. Defendants are the car dealership from which Plaintiff sought to buy the car,

WKM Automotive, Inc., d/b/a McGrath Kia of Highland Park ("McGrath Kia"), the arresting

officers, David Bekov ("Officer Bekov") and Trevor Hansen ("Officer Hansen"), the City of

Highland Park, and the bank which issued Plaintiff's check, Fifth Third Bank, N.A. ("Fifth Third

Bank"). All defendants but Officer Bekov and the City of Highland Park have filed motions to

dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the

reasons set forth below, the motions to dismiss are granted in part and denied in part.

## BACKGROUND

The below facts are drawn from the allegations in Plaintiff's complaint, which for the

purposes of the motions to dismiss the Court accepts as true, drawing all reasonable inferences in

Plaintiff's favor. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

1

On March 10, 2023, Plaintiff accompanied her cousin Enoch Graves ("Graves") to a Fifth Third Bank retail branch in Chicago, Illinois. The purpose of their visit was to obtain a cashier's check from Graves' account to purchase Plaintiff a car for her birthday. At the bank, Plaintiff and Graves met with bank employees and shared the purpose of their visit. The bank employees said they could accommodate the request, and assured Plaintiff and Graves that a cashier's check is less susceptible to fraud than a personal check and that the check would clear. Plaintiff, Graves, and the bank employees then called McGrath Kia on speaker phone. During the call, Matt and Daniel, employees of McGrath Kia, said that the dealership would accept a cashier's check as payment for a vehicle purchase. They communicated how much the check should be made out for and said that Graves would not need to accompany Plaintiff to the dealership for the purchase. Plaintiff was subsequently issued a cashier's check and drove to the dealership without Graves.

At the dealership, Plaintiff met Matt and Daniel and affirmed their earlier conversation. However, Plaintiff noticed a sense of unwelcomeness from Matt and Daniel and other employees of McGrath Kia, who were predominantly white. After test driving one of the cars, Plaintiff was ready to purchase it. She gave Matt and Daniel the check she had been issued earlier that day, and Matt and Daniel took the check with them to the back of the dealership. Plaintiff presumes that at this point Matt and Daniel were calling Fifth Third Bank to validate the legitimacy of the check. Plaintiff further alleges, "on information and belief," that during the call with the bank, Matt and Daniel "referenced Plaintiff's race as African-American, did not contact the branch where the Check was drawn … and did not reference the earlier conversation" they had with Fifth Third Bank employees. Doc. 1 at 5.

Plaintiff believes that in response, Fifth Third Bank falsely communicated to Matt and Daniel that the check was fraudulent and that they should call the police to arrest Plaintiff. Plaintiff alleges that this instruction was a deviation from Fifth Third Bank's policy and practice of contacting the bank branch where a cashier's check was drawn when the validity of a cashier's check is in question, and Fifth Third Bank deviated from this policy and practice solely because of Plaintiff's race.

Daniel called the police, although Plaintiff alleges that the dealership's policy and practice is to return checks to customers and decline the sale if fraud is suspected. Plaintiff alleges that McGrath Kia deviated from this practice solely because of Plaintiff's race. During the call, Daniel told the police dispatcher that an African American woman was at the dealership attempting to buy a car with a fraudulent check and McGrath Kia wanted her arrested.

Shortly thereafter, two police officers, Officer Bekov and Officer Hansen, arrived at the dealership. They told Plaintiff that they were there to investigate her check, and she responded that the check was not fraudulent and attempted to tell them about her visit to the bank with Graves. Plaintiff specified that the check was issued from Graves' account, not hers. She also specified that she, representatives from the bank, and Matt and Daniel had reached an agreement regarding payment earlier that day. During this conversation, Plaintiff called Graves and pleaded with the officers to speak with him, but the officers declined.

Officer Bekov then asked Plaintiff if she was from the area where the Fifth Third Bank branch was located (a predominantly African American neighborhood). She said yes, and Bekov responded in a condescending tone, stating "Oh you're from Gresham, ok… ." *Id.* at 7. Plaintiff corrected him that she is from the Englewood area, and Officer Bekov indicated that he was familiar with that area too.

3

Officer Bekov then stepped outside to call the Fifth Third Bank branch Plaintiff had visited earlier that day. During the call, Officer Bekov spoke to a representative named Carroll (not one of the employees Plaintiff had worked with earlier that day) and asked whether an account holder by the name of Sade Crockett had come in earlier to purchase a cashier's check, as he was currently investigating a check-fraud call at the McGrath Kia dealership. Carroll said that the check was probably not fraudulent, to which Officer Bekov replied "It could be, right." *Id.* at 8. He then communicated that McGrath Kia had told the officers that Fifth Third Bank had earlier told McGrath Kia that the check was fraudulent. The representative responded that if McGrath Kia told them that the check was fraudulent, then the check was likely fraudulent because the bank did not have a customer named Sade Crockett, the bank's systems were down so Carroll could not validate the check, no large cashier's checks had been issued that day, and "they" (meaning people from neighborhoods like Plaintiff's neighborhood) are probably using Plaintiff as a "tool" to purchase a vehicle with a fraudulent check. *Id.* Officer Bekov thanked Carroll for her time then expressed his agreement with her comments about "people from those neighborhoods." *Id.*

Back in the dealership, Officer Bekov summarized his conversation with Carroll to Officer Hansen and stated that he believed Plaintiff's check was fraudulent and that Fifth Third confirmed that Plaintiff's check was fraudulent. Officer Hansen asked Officer Bekov which name he had provided to Fifth Third Bank. Instead of answering Officer Hansen's question, Officer Bekov restated to Officer Hansen that Fifth Third Bank confirmed that Plaintiff's check was fraudulent.

Plaintiff was subsequently arrested and placed into custody in front of a large crowd. Plaintiff was detained overnight at the Highland Park police station and charged with felony

4

forgery. During the criminal proceedings against her, Plaintiff suffered emotionally. Several online media outlets reported Plaintiff's arrest. The case was continued without dismissal several times until in July 2023 when all charges against her were dismissed.

On October 13, 2023, Plaintiff commenced this action. Her complaint includes numerous counts and claims per count. In Count I, Plaintiff brings against all Defendants claims under 42 U.S.C. §1983, alleging unreasonable search and seizure, false imprisonment, false arrest, malicious prosecution and violations of her 14th Amendment rights. In Count II, Plaintiff brings claims against Defendants under 42 U.S.C. §1981, alleging that Defendants acted to deprive Plaintiff of her right to make and enforce contracts, her right to the full and equal benefit of all laws, and her right to be free from various Fourth Amendment violations. In Count III, Plaintiff brings claims against Defendants under 42 U.S.C. §1985, alleging a racially-motivated conspiracy for the purposes of depriving Plaintiff of equal protection of the laws and her Fourth Amendment rights. Finally, in Count IV Plaintiff brings numerous state law claims against Defendants, including false imprisonment, false arrest, and malicious prosecution (Count IV(A)), willful and wanton conduct (Count IV(C)), and intentional infliction of emotional distress (Count IV(D)). Count IV also alleges against McGrath Kia and Fifth Third Bank common law negligence (Count IV(B)), negligent infliction of emotional distress (Count IV(E)), and violations of the Illinois Hate Crime Act (Count IV(F)).

## ANALYSIS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### A. Claims Against Officer Hansen

Officer Hansen challenges the sufficiency of Plaintiff's Section 1983 claim by asserting that he had probable cause to arrest her. "A warrantless arrest of an individual in a public place for a felony… is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). "This is so even where the defendant officers allegedly acted upon a malicious motive" such as racial animus. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Thus, if Officer Hansen had probable cause to arrest Plaintiff at the dealership for felony forgery, then he cannot be found liable under Section 1983 for unreasonable search and seizure, false imprisonment, false arrest, or malicious prosecution. *See id.* ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution.").[1]

Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (alterations adopted). It is based not on the facts "as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer." *Id.*

---

[1] Contrary to Plaintiff's suggestion, courts routinely dismiss claims where the complaint itself establishes probable cause. *E.g.*, *Squires-Cannon v. White*, 864 F.3d 515, 518 (7th Cir. 2017) (affirming dismissal because probable cause existed).

The Court finds that even when accepting all allegations in Plaintiff's complaint as true and drawing reasonable inferences in Plaintiff's favor, Officer Hansen had probable cause to arrest Plaintiff at the time of her arrest. The Seventh Circuit has repeatedly reaffirmed that when police officers obtain information from an eyewitness establishing the elements of a crime, probable cause almost always exists absent evidence that the information or the person providing it is not credible. *See Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001). Here, the crime Plaintiff was suspected of having committed was felony forgery, which involves the use of a false writing or instrument, capable of defrauding, and an intent to defraud. *People v. Brown*, 72 N.E.2d 859, 862 (Ill. 1947). Officer Hansen was informed by both McGrath Kia and Officer Bekov that Plaintiff was attempting to make a purchase with a fraudulent check. Both also told Officer Hansen that Fifth Third Bank had confirmed that the check was fraudulent. Based on this information, Officer Hansen had probable cause to arrest Plaintiff.

Plaintiff argues that Officer Bekov and the McGrath Kia employees were obviously incredible. While the complaint does allege that Officer Bekov was condescending about Plaintiff's neighborhood, the Court does not believe that this makes it unreasonable for Officer Hansen to believe Officer Bekov's statement that Fifth Third Bank had told him the check was fraudulent. And as for the McGrath Kia employees, Plaintiff points to no evidence of which Officer Hansen was aware that would indicate racial bias by the car dealership, other than the fact that the dealership was in a predominantly white affluent community and that there was only one African American employee present. These facts, however, do not lead to a reasonable inference that McGrath Kia employees were incredible. For Officer Hansen's probable cause determination, what matters is whether the evidence was so incredible that no reasonable officer could believe it was truthful. *See Moorer v. City of Chicago*, 92 F.4th 715, 722 (7th Cir. 2024).

7

In making this determination, "the police are under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003); *Moorer*, 92 F.4th at 722 (questionable witness identifications may be enough to provide probable cause to arrest). Here, both McGrath Kia and Officer Bekov were purportedly relying on the statements of a neutral third party: Fifth Third Bank. Under these facts, it was not unreasonable for Officer Hansen to believe them. Even drawing all reasonable inferences in Plaintiff's favor, the presence of probable cause has not been called into question by the complaint.[2]

Finally, if probable cause did not exist, probable cause was at least arguable for the same reasons just explained. An officer is entitled to qualified immunity against claims like those brought here when "a reasonable officer could have mistakenly believed that probable cause existed." *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 655 (7th Cir. 2024). Officer Hansen was well within this zone of reasonableness when he arrested Plaintiff. Because probable cause (or arguable probable cause) existed at the time of the arrest upon which Plaintiff bases her unreasonable search and seizure, false imprisonment, false arrest, and malicious prosecution claims, those claims are dismissed as to Officer Hansen.

The Court next addresses Plaintiff's Section 1983 equal protection and Section 1981 claims. "The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class.'" *Reget v. City of La Crosse*, 595

---

[2] That Officer Hansen followed up with Officer Bekov to inquire as to whether the latter asked the bank about the right account does not defeat Officer Hansen's probable cause—Officer Bekov replied that Fifth Third Bank confirmed that Plaintiff's check was fraudulent. To a reasonably prudent officer standing in Officer Hansen's shoes, this statement could have been understood to mean that Officer Bekov had done whatever due diligence was necessary to confirm that the check was fraudulent, or at least, that Fifth Third Bank thought it so. Moreover, so long as the individual making the accusation is "reasonably credible" then "there is no constitutional duty to investigate further." *Pasiewicz*, 270 F.3d at 524.

F.3d 691, 695 (7th Cir. 2010). "To state a claim for race-based discrimination, [plaintiff] needs to assert that the police discriminated against her because of her race." *Kim v. Ritter*, 493 F. App'x 787, 789 (7th Cir. 2012). Plaintiff nowhere alleges that Officer Hansen discriminated against her because of her race, other than the conclusory assertion that the actions of the "Defendant Officers in falsely accusing the Plaintiff of check fraud and intentionally, negligently and/or recklessly failing to verify the legitimacy of Plaintiff's Check resulted in … intentional discrimination against Plaintiff in violation of Plaintiff's Fourteenth Amendment rights." Doc. 1 at 16. This conclusory assertion does not suffice and is not supported by the facts pled in the complaint with respect to Officer Hansen, who is nowhere alleged to have discriminated against Plaintiff because of her race but rather seems (based upon the facts alleged in the complaint) to have arrested her because of the allegations of others that Plaintiff had violated the law. *See, e.g.*, *Kim v. Ritter*, 493 F. App'x 787, 789 (7th Cir. 2012) (affirming dismissal of equal protection claim where plaintiff did not plead that officer's knowledge of her national origin affected officers' behavior towards her and where officer separately had probable cause for arrest); *Ashcroft v. Iqbal*, 556 U.S. 662, 682-83 (2009) (finding complaint did not state a plausible claim for invidious discrimination where there was an obvious alternative explanation to discriminatory intent). Thus, the Court finds that Plaintiff has not adequately plead that Officer Hansen acted with racially discriminatory intent. Because of that inadequacy, Plaintiff's Section 1981 and Section 1983(5) claims against Officer Hansen are dismissed. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006), *as amended on denial of reh'g* (May 25, 2006) (noting that "in order to establish a § 1981 claim of racial discrimination in a retail transaction" plaintiff must demonstrate that the defendant "had an intent to discriminate on the basis of race"); *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022) (requiring that plaintiff

plead not only a conspiracy but that the conspiracy was motivated by racial or otherwise class-based discriminatory animus).

For the above reasons, Counts I, II, III, and IV(A) are dismissed as to Officer Hansen.

### B. Claims Against Fifth Third Bank and McGrath Kia

Fifth Third Bank and McGrath Kia are charged in Count I with violations of Section 1983. Section 1983 provides a right of action for constitutional deprivations that occur "under color of" state law. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 825 (7th Cir. 2019). Thus, private actors like Fifth Third Bank and McGrath Kia cannot usually be sued under Section 1983 unless the "private actor conspires with a state actor to deprive someone's constitutional rights." *Id.* Tacitly acknowledging that her claims survive only if this exception applies, Plaintiff argues that the conspiracy requirement is sufficiently pled here. To adequately plead Section 1983 liability via a conspiracy, Plaintiff must have pled that "(1) a state official and private individual(s) reached an understanding to deprive [her of her] constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (cleaned up). The "mere act of filing false police reports is not actionable under § 1983." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

Plaintiff pleads that McGrath Kia employees falsely reported to the police that she was attempting to use a fraudulent check to buy a car. This allegation is not enough to suggest that an agreement existed between the police and McGrath Kia. *See id.* Rather, based upon the allegations in the complaint, McGrath Kia "acted independently from the government" in making its reports. *Id.* (underscoring Seventh Circuit's consistent holdings that furnishing information to law enforcement officers does not constitute joint activity even in an

unconstitutional arrest case). The independence of the arresting officers and McGrath Kia is underscored by the fact that when the officers arrived, Officer Bekov decided to double-check McGrath Kia's report by calling Fifth Third Bank himself. Thus, Plaintiff has failed to allege a conspiracy (or other joint action) between the police and McGrath Kia, and Count I is dismissed as to McGrath Kia.

As for Fifth Third Bank, a bit more nuance is required. The key allegations center around Officer Bekov's conversation with Fifth Third Bank representative Carroll.[3] During that conversation, Plaintiff alleges that Officer Bekov and Carroll agreed that even though they could not presently verify the legitimacy of Plaintiff's check, someone from her neighborhood was likely to be a part of a fraudulent car-purchasing scheme. However, during that same conversation, Officer Bekov also stated that Fifth Third Bank had earlier told McGrath Kia that Plaintiff's check was fraudulent, and Carroll responded that if McGrath Kia told Officer Bekov the check was fraudulent, then it was likely fraudulent. She also stated that the bank did not have a customer named Sade Crockett, and that no large cashier's checks had been issued by the bank that day. These allegations, though plausibly suggesting racial animus by Carroll and Officer Bekov, do not establish that Carroll (on behalf of Fifth Third Bank) agreed with Officer Bekov that Plaintiff should wrongfully be searched, seized, arrested, imprisoned, or prosecuted. No allegation suggests that Carroll knew the check was not fraudulent, or more broadly establishes the willfulness required for Fifth Third Bank to be held liable. *Compare Spiegel*, 916 F.3d at 617 (finding conspiracy not plausibly pled where plaintiff "never alleges that the officers were aware

[3] The earlier conversation between the McGrath Kia employees and Fifth Third Bank cannot form the basis for a state-conspiracy allegation because the facts as alleged cannot reasonably be interpreted to involve any sort of meeting of the minds or any agreement to violate Plaintiff's constitutional rights between Fifth Third Bank and the state when the state was not a party to that conversation. And as discussed above, that Fifth Third Bank's fraud accusation was ultimately relayed to the police by McGrath Kia is also not enough because false reports do not a conspiracy allege. *Spiegel*, 916 F.3d at 617.

that the reports were false"), *with Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1016 (7th Cir. 2000) (finding conspiracy sufficiently pled where allegations established that officer and private parties agreed to *fabricate* concerns about the welfare of the plaintiff's sister in order to have her removed from the parent's home, bringing about false child neglect charges); *see also Wilson v. Warren Cnty., Illinois*, 830 F.3d 464, 469 (7th Cir. 2016) (at summary judgment, elaborating on mental state requirements and finding them not met because state actor and private party did not share an unconstitutional goal). Nor do the facts pled allege that Carroll affirmatively asked for the police to arrest Plaintiff, only that Carroll agreed fraud was likely based on the information she had at the time. *Compare Burns v. Odeon*, No. 95 C 5280, 1996 WL 501742, at *9 (N.D. Ill. Sept. 3, 1996) (under Section 1985(3), finding conspiracy sufficiently pled where private actor called police and stated "I want him [plaintiff] arrested … taken outta here … uh, several different charges … for just several different reasons"), *with Kelley v. Myler*, 149 F.3d 641, 649 (7th Cir. 1998) (finding no conspiracy where private party merely "described the situation to the officers"). Indeed, it was Officer Bekov who reached out to Fifth Third Bank, not the other way around. These allegations alone are not enough to suggest joint action or a conspiracy to deprive Plaintiff of her constitutional rights. *See Spiegel*, 916 F.3d at 616 (suggesting that alleging "aid to or encouragement of state action" is not enough for a conspiracy claim). For this reason, Count I is also dismissed as to Fifth Third Bank.

Because Plaintiff has failed to plead that a conspiracy existed between McGrath Kia and the police, or between Fifth Third Bank and the police, the remainder of Plaintiff's claims requiring conspiracy allegations only survive if she has sufficiently pled that a conspiracy existed between McGrath Kia and Fifth Third Bank. But this purely private conspiracy, even if sufficiently pled, would present other problems Plaintiff cannot overcome.

"To be actionable under § 1985(3), a purely private conspiracy … must interfere with the Thirteenth Amendment right to be free from involuntary servitude" or the Thirteenth Amendment right to interstate travel. *Petrovic v. Enter. Leasing Co. of Chicago, LLC*, 513 F. App'x 609, 611 (7th Cir. 2013). Plaintiff alleges nothing about the Thirteenth Amendment and her response briefs do not address how her complaint satisfies this requirement. Instead, Plaintiff suggests that the conspiracy was not purely private because there was some state action associated with the alleged conspiracy and therefore the requirement does not apply. But the Court has already found that Plaintiff failed to allege police participation in any conspiracy. Moreover, nothing in Plaintiff's complaint can be read to establish a conspiracy between McGrath Kia and Fifth Third Bank. None of the parties appeared to have known each other and had no relationship beyond the two phone calls McGrath Kia had with two different groups of people at Fifth Third Bank on one day. It is not a reasonable inference from these facts that an agreement was formed between these entities for the purpose of violating Plaintiff's constitutional rights. As such, Plaintiff's Section 1985(3) claims against Fifth Third Bank and McGrath Kia, contained in Count III, are also dismissed.

The final federal claims raised against McGrath Kia and Fifth Third bank are Plaintiff's Section 1981 claims. "To establish a claim under § 1981, … plaintiffs must show that (1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract)." *Morris v. Off. Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Fifth Third Bank and McGrath Kia both argue that Plaintiff has not adequately pled the third element, intent to discriminate. The Court disagrees.

13

First, two notes on the pleading requirements. One: The fact that many of Plaintiff's claims are based on "information and belief" is not a bar to finding that Plaintiff has set forth her claims with sufficient factual specificity. The Seventh Circuit, along with many others, has instructed that claims may be pled on information and belief so long as the plaintiff has done some reasonable pre-complaint inquiry but the information is simply outside of her control. *See generally*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 444 (7th Cir. 2011) (discussing pleading requirements in the context of the heightened pleading standards applicable to fraud allegations and still concluding that allegations on information and belief sometimes suffice); *see also Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023) (collecting cases). The factual allegations Plaintiff pleads on information and belief are peculiarly within the control of Defendants, and so the Court does not take issue with her form of pleading. *E.g.*, Doc. 1 at 5 (pleading on "information and belief" what might have occurred during the conversation between McGrath Kia and Fifth Third Bank). Two: The bar for pleading race discrimination is relatively low; the complaint need only do enough to state a plausible claim that puts defendant on sufficient notice to enable it to begin an investigation and prepare a defense, which often means including facts establishing the type of discrimination, by whom, and when. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). Now, for the legal sufficiency of Plaintiff's allegations.

As to McGrath Kia, Plaintiff alleges that its employees, Matt and Daniel, knew that Plaintiff would be coming to McGrath Kia with a cashier's check from a relative that the bank had issued for Plaintiff to use to purchase a car. Matt and Daniel told Plaintiff that they would accept the check and that her relative did not need to accompany her to the dealership. Yet when Plaintiff arrived, they were unwelcoming to her and questioned the legitimacy of the check.

14

Though it went against McGrath Kia's policy and practice to call the police and pursue an arrest when presented with a possibly fraudulent check, that is exactly what Matt and Daniel did. Based upon the allegations in the complaint, one key circumstance that changed between when Matt and Daniel agreed on the phone to accept Plaintiff's cashier's check and when she presented it to them in person is that they saw Plaintiff. Based upon these facts, the Court believes that Plaintiff has adequately pled racial discrimination with respect to the making of a contract. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) ("To survive … a motion to dismiss, a plaintiff need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics."). Having included sufficient factual allegations to put McGrath Kia on notice of the basis of her claim and having included some facts suggesting that racial discrimination is plausible, dismissal is denied as to Plaintiff's Section 1981 claim against McGrath Kia.

Essentially the same applies to Plaintiff's claim against Fifth Third Bank. Plaintiff alleges that when McGrath Kia called Fifth Third Bank, the bank deviated from its policy and practice of verifying the legitimacy of a check with the branch from which the check was drawn because of Plaintiff's race. Plaintiff further alleges that when Officer Bekov called Fifth Third Bank, the manager made comments suggesting that people from Plaintiff's neighborhood are likely to be involved in check fraud. Plaintiff alleges that her neighborhood is predominantly African American, a fact likely to be known among Chicago-area residents and workers. And Plaintiff alleges that Fifth Third Bank might have falsely reported to McGrath Kia that her check was fraudulent when it was not. These allegations amount to a plausible claim of discriminatory intent, distinguishing the pleadings here from those in Fifth Third Bank's out-of-circuit case cites where there were no facts suggesting that race had anything to do with the defendants' decisions.

*E.g.*, *Mekuria v. Bank of Am.*, 883 F. Supp. 2d 10, 15 (D.D.C. 2011) ("[Plaintiff] has not, for example, alleged that any of the tellers at the Bank made any negative comments to him or treated him in a hostile or inappropriate manner."). For these reasons, Plaintiff's Section 1981 claim against Fifth Third Bank similarly survives dismissal.

## C. *Remaining State Law Claims*

### i. *Common Law Negligence*

Plaintiff claims that Fifth Third Bank and McGrath Kia are liable for Illinois common law negligence. "To recover damages based upon negligence, a plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury." *Doe v. Coe*, 135 N.E.3d 1, 12 (Ill. 2019).

Plaintiff's complaint alleges that Fifth Third Bank committed negligence by falsely telling McGrath Kia that Plaintiff's cashier's check was fraudulent without adequate investigation or due diligence (for example, by contacting the appropriate branch location) and by telling McGrath Kia to call the police. Fifth Third Bank replies that it never owed a duty to Plaintiff, a non-customer of the bank, and so her negligence claim fails as a matter of law.

Illinois courts "have long recognized that every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or proximity of relationship." *Id.* at 13 (cleaned up). The Illinois case law establishing that non-customers are not owed a duty of care is with respect to the duty to exercise "ordinary care in disbursing the depositor's funds." *Radwill v. Romeo*, 2013 IL App (1st) 110912-U, ¶ 29. Here though, Plaintiff alleges a different duty: exercising ordinary care before asserting the

16

fraudulence of a check. Thus, Plaintiff argues that the fact that Plaintiff was not a customer of the bank does not mean the bank owed her nothing.

"The four factors courts typically consider in determining whether a duty exists are: (1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Wilfong v. L.J. Dodd Const.*, 930 N.E.2d 511, 519 (Ill. App. Ct. 2010). Considering these factors, the Court determines that under the circumstances alleged here, Plaintiff may be able to develop facts that would show that Fifth Third Bank owed her a duty to do more than it did, especially if Fifth Third Bank actually told McGrath Kia to call the police and have Plaintiff arrested.

Fifth Third Bank also argues that even if there was a duty, it did not breach it. But Fifth Third Bank ignores the allegations in the complaint that when McGrath Kia called the bank to verify the check, Fifth Third Bank communicated to McGrath Kia that the check was fraudulent. Accepting these allegations as true, Plaintiff sufficiently pled that Fifth Third Bank breached a duty of ordinary care.

As for McGrath Kia, the Court is not persuaded by its argument that Plaintiff's negligence claim should be summarily dismissed as an attempt to impermissibly advance a malicious prosecution claim. Plaintiff is entitled to plead overlapping theories of liability. What McGrath Kia did not do in its opening motion is argue that Plaintiff's negligence claim cannot satisfy the elements for common law negligence. Its belated attempt to call into question the duty element of negligence fares no better, as arguments "may not be raised for the first time in a reply brief." *United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008). The negligence claim therefore may proceed against McGrath Kia.

###### ii. *Negligent Infliction of Emotional Distress*

Next, Plaintiff claims that Fifth Third Bank and McGrath Kia are liable for negligent infliction of emotional distress. "Generally, to state a claim for negligent infliction of emotional distress, a plaintiff must allege the traditional elements of negligence." *Benton v. Little League Baseball, Inc.*, 181 N.E.3d 902, 931 (Ill. App. Ct. 2020). For these claims, Illinois courts separate "bystanders" from "direct victims." *Id.* Under the "impact rule," a direct victim can recover only "if [she] suffered emotional distress and a contemporaneous physical injury or impact, requiring actual physical contact of some sort." *Id.* A bystander, on the other hand, must be within the zone of physical danger, such that they have a reasonable fear for their own safety and can recover for injury or illness that results from their emotional distress. *Id.* at 932.

Plaintiff appears to conflate the requirements applicable to direct victims and bystanders, arguing that physical manifestations of emotional distress are not required to state a claim. She is correct that physical manifestations need not be pled, but physical manifestations are different from contemporaneous physical injuries, and the latter requirement applies here. *See Benton*, 181 N.E.3d at 932. The Court is not able to discern any well-pled contemporaneous physical injury alleged in Plaintiff's complaint (nor can it reasonably infer any) caused by McGrath Kia's or Fifth Third Bank's negligent acts, and therefore her negligent infliction of emotional distress claim in Count IV(E) is dismissed against both Defendants.

###### iii. *Willful and Wanton Conduct (Aggravated Negligence)*

The Court interprets Plaintiff's claims for willful and wanton conduct, consistent with the practice of Illinois courts, as an aggravated form of negligence. *E.g.*, *Papadakis v. Fitness 19 IL 116, LLC*, 148 N.E.3d 648, 653–54 (Ill. App. Ct. 2018). To state this type of claim Plaintiff must plead the elements of negligence plus some heightened state of mind. *Id.* "How, precisely, to

define that heightened state of mind has proven elusive." *Id.* In "the appropriate case, the same facts that are alleged to constitute negligent conduct could be sufficient to allege willful and wanton conduct." *Id.* As to Fifth Third Bank and McGrath Kia, the Court has already found that Plaintiff pled sufficient facts to keep her negligence claims alive, and the Court is not persuaded by Fifth Third Bank or McGrath Kia's arguments that Plaintiff's aggravated negligence claims are so implausibly pled as to warrant the opposite result.

As to Officer Hansen, however, the complaint is devoid of factual allegations from which the Court can reasonably infer liability for aggravated negligence. Assuming the proposed duty "to conduct a proper and diligent investigation into the legitimacy of Plaintiff's Check" (Doc. 1 at 24) existed, Officer Hansen exercised ordinary care by arresting Plaintiff after two separate reports that the check was fraudulent, both (to Officer Hansen's knowledge) based on information from the bank that would have issued it. Though Plaintiff also argues other types of breach, those arguments are not supported by the factual allegations in her complaint. For example, the complaint states that the arresting officers "failed to update information and correct misleading information" and "failed to withdraw baseless charges" but nowhere states (as far as the Court can discern from Plaintiff's 166-paragraph complaint) that Officer Hansen ever learned Plaintiff's check was valid during the pendency of the criminal proceedings against her. The Court cannot infer that Officer Hansen had or breached a duty to disclose or act upon information he did not have. For these reasons, Count IV(C), asserting aggravated negligence, is dismissed as to Officer Hansen.

    iv.    *Intentional Infliction of Emotional Distress*

To make out a claim for intentional infliction of emotional distress ("IIED"), three elements must be satisfied.

19

> First, the conduct involved must be truly extreme and outrageous. Second, the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause *severe* emotional distress.

*Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003) (quoting *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)).

At the outset, the Court dismisses Plaintiff's IIED claim (Count IV(D)) against Officer Hansen for the same reasons discussed above with respect to aggravated negligence and for related reasons discussed with respect to probable cause. Plaintiff simply does not establish Officer Hansen's state of mind (as opposed to the effects on Plaintiff's mental state) in such a way as might suggest his liability under the standard just articulated.

As for Fifth Third Bank and McGrath Kia: A false police report is generally not actionable as IIED. *See, e.g.*, *Schiller v. Mitchell*, 828 N.E.2d 323, 335–36 (Ill. App. Ct. 2005) (collecting cases); *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 942 (Ill. App. Ct. 1997). Relatedly, a number of Illinois courts have dismissed claims of IIED based upon defamation "on the ground that the conduct was not extreme and outrageous." *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998) (cleaned up). There are, however, certain circumstances in which the making of a false report can constitute intentional infliction of emotional distress. Those circumstances almost always include allegations that the false report was made with knowledge that the accusation or information provided to authorities was not true. *Compare, e.g.*, *B.F.G. v. Blackmon*, No. 08 CV 1565, 2008 WL 4155263, at *5 (N.D. Ill. Sept. 8, 2008) (plaintiff plausibly pled IIED claim where attorney representing department of children and family services pursued charges for sexual misconduct despite no credible evidence, hid physical evidence, lied to the court, and presented false testimony), *with, e.g.*, *Costa v. Ramaiah*, 689 F.

Supp. 3d 553, 593 (N.D. Ill. 2023) (holding that mistaken or misguided false accusation did not give rise to plausible claim in the absence of facts supporting the inference that defendants knew allegation was false).

Moreover, certain aggravating circumstances must also be present. For example, IIED has been found where the accusation itself is one regarded as particularly shameful in our society or prone to bring about particularly devastating consequences for that specific plaintiff. *See Costa*, 689 F. Supp. 3d at 592 (collecting cases involving false sexual abuse and child abuse accusations, and cases involving losses of child custody as a direct result of false accusations); *see also, e.g.*, *Brown v. Kouretsos*, No. 15 CV 11076, 2016 WL 3269000, at *5 (N.D. Ill. June 15, 2016) (acknowledging that false accusations of smoking marijuana on school property are generally not actionable but finding that teacher-plaintiff stated IIED claim where she alleged principal publicly accused her of smoking in a school bathroom feet away from children such that she might forever lose the trust of her community, imperiling her livelihood). In addition, a false report might be outrageous if it was one part of a broader "campaign" to bring about devastating legal consequences for the plaintiff. *E.g.*, *Andersen v. Vill. of Glenview,* No. 17 CV 05761, 2018 WL 6192171, at *21 (N.D. Ill. Nov. 28, 2018), *aff'd*, 821 F. App'x 625 (7th Cir. 2020) (denying a motion to dismiss an IIED claim where plaintiff alleged that the defendant "engaged in a campaign to have her falsely arrested and prosecuted so that she would lose custody over her children"); *B.F.G.*, No. CIV. A. 08 C 1565, 2008 WL 4155263, at *5 (attorney persisted in providing false evidence from initial report through court proceedings). These cases are consistent with the general standard that under Illinois law, "liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of human decency." *Cook*, 141 F.3d at 331 (cleaned up).

Whether Plaintiff's allegations might plausibly be read to suggest that McGrath Kia knew it was making a false report is difficult to discern. On the one hand, McGrath Kia spoke to Fifth Third Bank earlier that day and knew that Plaintiff planned to come in with a cashier's check like the cashier's check she arrived with. But rather than go directly to the police with its false accusation, McGrath Kia first called Fifth Third Bank to verify the legitimacy of the check, an odd decision for a party set on knowingly lodging a false accusation. Moreover, by the time McGrath Kia called the police, the complaint alleges that Fifth Third Bank had told McGrath Kia that the check was a forgery.

Even if these allegations plausibly suggest McGrath Kia's knowledge that it was making a false report, they do not plausibly state a claim for IIED because the circumstances taken as a whole do not make McGrath Kia's conduct beyond all possible bounds of human decency. None of the aggravating circumstances discussed above are present. The conduct McGrath Kia is alleged to have engaged in is making a single phone call to the police, not engaging in a campaign of persistent conduct designed to get Plaintiff arrested and prosecuted. *See Feltmeier*, 798 N.E.2d at 83 (acknowledging that a pattern or course of conduct may be actionable where one instance of extreme behavior may not be). Moreover, false accusations of felony forgery are substantially less egregious than false accusations of child sexual abuse or drug use by a teacher near students. *See Costa*, 689 F. Supp. 3d at 592; *Brown*, No. 15 C 11076, 2016 WL 3269000, at *5; *see also Day v. Buckham*, No. 3:21-CV-50022, 2021 WL 5050288, at *4 (N.D. Ill. Nov. 1, 2021) (noting in case involving false accusations of child sexual abuse that a "parent's relationship with their child is sacred, and accusations like the one at issue here do irreparable

22

harm"). McGrath Kia also did not wield any special authority over Plaintiff, nor were the accusations themselves made in a particularly public way. *See McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (explaining that a defendant's position of power or authority over plaintiff makes conduct more likely to be outrageous); *cf., e.g.*, *Brown*, No. 15 C 11076, 2016 WL 3269000, at *5 (accusations made by teacher's principal in the presence of plaintiff's colleagues). Thus, even drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not stated a claim for IIED against McGrath Kia because she has not plausibly alleged extreme and outrageous conduct.[4] Thus, Count IV(D) is dismissed as to McGrath Kia.

The Court concludes the same as to Fifth Third Bank. Plaintiff alleges that during Fifth Third Bank's conversation with McGrath Kia, McGrath Kia informed Fifth Third Bank that it suspected an African American woman was attempting to use a fraudulent check. The bank representative then falsely communicated to Matt and Daniel, without adequate investigation, that the check was indeed fraudulent, and that McGrath Kia should call the police to have Plaintiff arrested. During Officer Bekov's conversation with Fifth Third Bank, Carroll allegedly made comments about Plaintiff's neighborhood that could be interpreted as evidencing racial animus and suggested to Officer Bekov that Plaintiff probably was using a fraudulent check. However, Plaintiff does not allege facts from which the Court can reasonable infer that Fifth Third Bank made its accusations with knowledge of their falsity. Given that false police reports are generally not actionable as IIED, and consistent with the above reasoning, the Court dismisses Count IV(D) as to Fifth Third Bank.

---

[4] The Court does not believe that the fact that McGrath Kia's conduct may have been motivated by racial bias moves the needle enough for Plaintiff to state a claim for IIED. The cases applying Illinois law and involving IIED and racial animus that this Court has found stick to the bedrock principle that the conduct itself must be sufficiently abhorrent to be actionable as IIED, notwithstanding the motivation of the defendant. *See, e.g.*, *Jones v. Culver Franchising Sys., Inc.*, 12 F. Supp. 3d 1079, 1090 (N.D. Ill. 2013) (rejecting argument that racial animus motivating conduct "by definition" makes that conduct extreme and outrageous).

     *v.*    *Illinois Hate Crimes Act*

Under the Illinois Hate Crimes Act ("IHCA") and relevant here, a person commits a hate crime by committing any one of a specified list of crimes, including disorderly conduct, motivated by the actual or perceived race of another individual. 720 ILCS 5/12-7.1(a). Moreover, "any person suffering injury to his or her person, damage to his or her property, … [or] disorderly conduct … as a result of a hate crime may bring a civil action" under the IHCA. 720 ILCS 5/12-7.1(c). For the purposes of the IHCA, "disorderly conduct" occurs when an individual "knowingly" transmits a report to a public officer "that an offense will be committed, is being committed, or has been committed, knowing at the time of the transmission that there is no reasonable ground" for that belief. 720 ILCS 5/26-1(a)(4).

Fifth Third Bank's first argument that Plaintiff's hate-crime claim against it should be dismissed is that it cannot be held liable because civil damages are only available when the plaintiff suffers an injury to her person or property, and Plaintiff makes no meaningful allegations of a physical injury. The problem with this argument is that although an older version of the statute may have had this requirement, the statute has since been amended and expanded. *Compare* 720 ILCS 5/12-7.1(c) (2011), *amended by* Hate Crimes, 2017 Ill. Legis. Serv. P.A. 100-197 (H.B. 3711) (providing "any person suffering injury to his person or damage to his property as a result of hate crime may bring a civil action"), *with* 720 ILCS 5/12-7.1 (eff. Jan. 1, 2018) (providing "any person suffering injury to his or her person, damage to his or her property, … [or] disorderly conduct [or a number of other offenses]… as a result of a hate crime may bring a civil action for damages"). The current version of the statute, therefore, does not limit civil actions in the way Fifth Third Bank argues.

24

Next, Fifth Third Bank argues that even if the above does not apply, Carroll's conduct does not come within the meaning of disorderly conduct as defined by Illinois law. On this point, the Court agrees. Plaintiff does not allege that Carroll knew her "report" to Officer Bekov (if even a "report" under Illinois law) was unreasonable. As Plaintiff alleges it, Officer Bekov told Carroll that the bank had earlier communicated that the check was fraudulent. Particularly coming from a police officer, that gave Carroll reasonable grounds to suspect an offense had been committed. Therefore, Plaintiff fails to allege facts from which the Court can infer that Fifth Third Bank committed a hate crime by disorderly conduct, and the Court dismisses Count IV(F) as to Fifth Third Bank.

McGrath Kia, on the other hand, makes no meaningful argument regarding the substantive law of the IHCA in its defense. Although McGrath Kia has arguably adopted Fifth Third Bank's brief, Fifth Third Bank's arguments rely on facts specific to Fifth Third Bank that do not apply to McGrath Kia. Though the Court can imagine certain difficulties Plaintiff might run up against, it will not essentially *sua sponte* dismiss Plaintiff's claim against McGrath Kia without some fair notice of the grounds. *See generally Ricketts v. Midwest Nat. Bank*, 874 F.2d 1177, 1185 (7th Cir. 1989). Thus, the Court denies dismissal of Count IV(F) as to McGrath Kia.

vi.    *Malicious Prosecution*

To state a claim for malicious prosecution under Illinois law, Plaintiff must allege that: (1) she "was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in [her] favor; and (5) there was an injury." *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). Regarding the third element, "some official action is required; a citizen does not commence a prosecution when he merely gives false information" to the authorities.

25

*Randall v. Lemke*, 726 N.E.2d 183, 185 (Ill. App. Ct. 2000). Only if the false information is given with knowledge of the falsity and then the authorities commence judicial proceedings based on that information is a citizen potentially liable. *Id.*

Consistent with the Court's earlier determination that Plaintiff has not pled facts from which the Court can infer that Fifth Third Bank knew its accusations to be false, the Court dismisses Plaintiff's Count IV(A) malicious prosecution claim as to Fifth Third Bank.

McGrath Kia argues that it cannot be held liable because it too did not knowingly make a false accusation and because the arresting officers' own investigation was a superseding cause of the proceedings against Plaintiff. On this second point, the Court agrees. Even if an informer knowingly provides false information to the police, "he or she is not liable for 'commencing' a criminal proceeding if the prosecution is based upon separate or independently developed information." *Szczesniak v. CJC Auto Parts, Inc.*, 21 N.E.3d 486, 491 (Ill. App. Ct. 2014). Even where the police would not have investigated plaintiff but for the false report, the independent gathering of information by the police operates as an intervening cause such that the prosecution is not the direct result of the false report, and the informer did not commence a criminal proceeding. *Randall*, 726 N.E.2d at 186.

Here, when the police arrived, they did not immediately arrest Plaintiff but undertook their own investigation. They spoke to her, then Officer Bekov stepped outside to call Fifth Third Bank himself. After that conversation, he reported to Officer Hansen that Fifth Third Bank confirmed the fraudulence of Plaintiff's check. Only then was Plaintiff arrested. These facts do not plausibly suggest that Plaintiff's arrest was based on McGrath Kia's false report as opposed to the arresting officers' independent and separate investigation. *Cf., e.g.*, *Simon v. Nw. Univ.*, 175 F. Supp. 3d 973, 982 (N.D. Ill. 2016) (finding malicious prosecution claim plausibly pled

where "Plaintiff alleges that the *only* evidence supporting the prosecution of Plaintiff is what came from Defendants"). Relying on Fifth Third Bank's supposed report of the check being fraudulent makes sense: After all, McGrath Kia was not in a position to know one way or the other the most significant fact in the investigation – whether the check was valid. Therefore, the Court dismisses Count IV(A)'s malicious prosecution claim as to McGrath Kia.

       vii.     *False Imprisonment and False Arrest*

"To state a claim of false imprisonment, a plaintiff must allege that the defendant caused or procured a restraint of the plaintiff without reasonable grounds to believe that the plaintiff was committing an offense." *Randall*, 726 N.E.2d at 186. When a "police officer makes a false arrest, a plaintiff may recover against a private defendant who supplied information to that police officer." *Id.* "However, the private defendant is subject to liability only if he either (1) directed the officer to arrest the plaintiff; or (2) procured the arrest by giving information that was the sole basis for the arrest." *Id.*

Though moving to dismiss the false arrest and false imprisonment claims against it, McGrath Kia does not advance any argument as to why these claims should be dismissed. The Court declines to dismiss Count IV(A)'s false arrest and false imprisonment claims as to McGrath Kia.

Fifth Third Bank offers numerous arguments as to why it cannot be liable for false imprisonment. Most clearly established in the Court's view, Plaintiff does not allege that Fifth Third Bank ever directed the officers to arrest Plaintiff. Doc. 1 ¶ 22 (alleging that Fifth Third Bank told McGrath Kia employees they should call the police); ¶ 26 (same). Plaintiff provides no support for her argument that influencing a third party to direct the police to arrest her satisfies the false imprisonment standard. Thus, the Court dismisses Count IV(A)'s false imprisonment

claim as to Fifth Third Bank. Fifth Third Bank and Plaintiff appear to agree that the false imprisonment and false arrest claims are coextensive, Doc. 45 at 17, Doc, 31 at 15, and so the Court also dismisses Count IV(A)'s false arrest claim against Fifth Third Bank.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are granted in part and denied in part. Counts I, III, and IV(D) are dismissed as to Officer Hansen, McGrath Kia, and Fifth Third Bank. Counts II, IV(A), and IV(C) are dismissed as to Officer Hansen. Counts IV(A) and IV(F) are dismissed as to Fifth Third Bank. Count IV(A) is partially dismissed as to McGrath Kia such that the malicious prosecution claim against it is dismissed but the false imprisonment and false arrest claims are not. Count IV(E) is dismissed as to both Defendants. To the extent Plaintiff believes she can amend the complaint to cure the deficiencies identified in this opinion, she may do so.

Dated: March 21, 2025

_____
APRIL M. PERRY
United States District Judge